UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      -v.-

ELIJAH BERMUDEZ

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/07/2023__

22-CR-335 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Defendant Elijah Bermudez ("Defendant") was charged on June 14, 2022, with one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 2). In the (S1) Superseding Indictment (the "SI"), the Defendant was charged on December 7, 2022 with one count of racketeering conspiracy in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and 846; one count of murder in aid of racketeering by allegedly engaging in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1) and committing knowing and intentional murder in violation of New York Penal Law §§ 125.25 and 20.00; one count of use of a firearm resulting in death in violation of 18 U.S.C. §§ 924(j)(1) and (2); and one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 16).

      On August 3, 2023, Defendant filed an omnibus motion (*see* ECF No. 19), the contents of which are discussed in more detail below. For the following reasons, the Defendant's motion is DENIED, in part, and GRANTED, in part.

**BACKGROUND**

The SI alleges that, at all relevant times, the Defendant was a member of the Bully Hard Hunna Blood Gang ("Bully Hard" or the "Enterprise"), a criminal organization engaged in, among other things, acts involving murder, robbery, fraud, and the distribution of controlled substances in New York State. (SI at ¶ 1). Bully Hard and its members: constitute an "enterprise" as defined in the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961(4) and an ongoing organization whose members and associates functioned as a continuing unit for the common purpose of achieving the objectives of Bully Hard; and were engaged in activities that affected interstate and foreign commerce. (*Id*. at ¶ 2). Moreover, the Defendant was a member of Bully Hard and engaged in the Enterprise's unlawful and other activity in furtherance of Bully Hard's aims. (*Id*.).

Those aims included, among other things, the promotion and enhancement of Bully Hard, keeping victims and potential victims in fear of Bully Hard and its members, enriching members though illegal acts, and protecting the Enterprise, and achieving its aims, through acts of violence and intimidation. (*Id.* at ¶¶ 6-7). To wit, the Defendant is charged with entering into a racketeering conspiracy with the other members of Bully Hard in violation of 18 U.S.C. §§ 1962(d) and 19863. (*Id*. at ¶ 8). In particular, the Defendant is alleged to have agreed that a coconspirator would commit at least two acts of racketeering activity to further Bully Hard's enterprise. (*Id.* at ¶ 9).

The Defendant was also charged with murder in aid of racketeering, as he is alleged to have committed the murder of a minor victim on June 20, 2022 (the "June 20 Homicide") in violation of 18 U.S.C §§ 1959(a)(1) and (2). (*Id.* at ¶ 13). The Defendant is further charged with the use of a firearm resulting in death, violating 18 U.S.C. §§ 924(j)(1) and (2), and with being a felon in

possession of ammunition arising from that same incident, violating 18 U.S.C. §§ 922(g)(1) and (2). (*Id*. at ¶¶ 14–15).

Defendant filed his motion on August 3, 2023. (ECF No. 19). The Government filed its opposition on September 27, 2023. ("Gov't Opp.", ECF No. 26). The Defendant did not reply.

## Discussion

Defendant seeks: (1) to dismiss Counts 1 and 2 of the SI; (2) a bill of particulars; (3) to compel the disclosure of pre-trial identification procedures, the names of the witnesses, and a hearing regarding the preclusion of trial identification of the defendant; (4) to suppress evidence gained from certain warrants and for a *Franks* hearing; (5) to compel the disclosure of Fed. R. Evid. 404(b) material; (5) to compel the pre-trial notice of the Government's intent to use evidence; (6) to dismiss Count 4 of the SI; (7) to compel disclosure of *Brady* and *Giglio* material and information regarding the loss or destruction of evidence; (8) to compel early notice and production of expert testimony and related materials and the early production of Jencks Act Material; and (9) to reserve the right to bring additional motions. (Memorandum in Support by Elijah Bermudez re Motion to Dismiss ("Def. Mem."), ECF No. 21).

## I.    Motion to Dismiss Counts 1 and 2

Defendant seeks to dismiss Counts 1 and 2 on the basis that it fails to show the requisite pattern of racketeering acts. (Def. Mem. at 3–7). Alternatively, Defendant seeks to dismiss Counts 1 and 2 on grounds that they fail to plead the underlying, predicate acts with sufficient specificity. (*Id*. at 7–13).

### a.   *Legal Standard*

Fed. R. Crim. Proc. ("FRCP") 7(c) requires that an indictment "must be a plain, concise, and definite written statement of the essential facts constitution the offense charged." Fed. R. Crim. P. 7(c)(1). Consequently, defendants "face[] a high standard in seeking to dismiss an indictment .

3

. . ."*United States v. Smith*, 985 F. Supp.2d 547, 561 (S.D.N.Y.), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016) (summary order); *see also*, *United States v. Raniere*, 384 F. Supp.3d 282, 299 (E.D.N.Y. 2019) (stating that dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights."). "An indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir. 2021) (citing *United States v. Wedd*, 993 F.3d 104, 201 (2d Cir. 2021)) (internal citations and quotations omitted). An indictment meets this standard by "little more than . . . track[ing] the language of the statute charged and stat[ing] the time and place (in approximate terms) of the alleged crime." *Id*.

Regarding RICO conspiracy charges, an indictment suffices if it "identif[ies] an enterprise, name[s] the defendant as someone associated with that enterprise, allege[s] that the defendant conspired to violate RICO, specif[ies] the time period during which the conspiracy operated, list[s] specific types of predicate crimes allegedly committed, and discuss[es] in detail the means and methods of the conspiracy." *United States v. Cooper*, No. 17 Cr. 296, 2020 WL 2307646, at *3 (E.D.N.Y. May 8, 2020) (citing *Raniere*, 384 F. Supp.3d at 300) (internal quotations omitted). Moreover, "a court may dismiss acts on which a RICO charge is predicated without dismissing the entire RICO charge." *Raniere*, 384 F. Supp.3d at 299 (collecting cases).

Before turning to its analysis, the Court notes the similarity, as pointed out by the Government, between the arguments raised in *Raniere* and those brought here. (*See* Gov't Opp. at 1, fn.1). Accordingly, the Court finds that decision from its sister district particularly compelling for purposes of the following analysis.

4

### b. *Analysis*

Defendant proffers that Counts 1 and 2 should be dismissed because the SI fails to allege predicate acts underlying the charges with sufficient specificity. (*See* Def. Mem. at 7–13). Separately, Defendant argues that Counts 1 and 2 fail to adequately allege a "pattern" of racketeering activity. (*See Id.* at 3–7).

"To be convicted of a conspiracy under § 1962(d), the government must prove only that a defendant *agreed with others* (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering." *United States v. Capers*, 20 F.4th 105, 117-18 (2d Cir. 2021) (citing *United States v. Vasciano*, 599 F.3d 184, 199 (2d Cir. 2010)) (emphasis in original, internal quotations omitted). A defendant is not required to commit or agree to commit the predicate acts; it is sufficient if the defendant simply "intend[s] to further an endeavor which, if completed, would satisfy all the elements of a substantive RICO offense." *Id.* at 118 (citing *United States v. Cain*, 671 F.3d 271, 291 (2d Cir. 2012)) (internal quotations omitted). That is, Section 1962(d) prohibits conspiracies "to participate in charged enterprise's affairs through a pattern of racketeering, not a conspiracy to commit predicate acts." *Id.* (citing *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009)) (internal quotations omitted).

The Court will first address the specificity of the alleged predicate acts before turning to the adequacy of the alleged pattern of racketeering activity.

### i. **Specificity of Predicate Offenses**

At the outset, the Court notes that Defendant's argument as to the specificity of the underlying offenses at first seems a somewhat ill fit for Count 2. To wit, Defendant focuses solely on RICO conspiracy case law. (*See* Def. Mot. at 7–13). Count 2 is not a conspiracy charge—the Government alleges Defendant committed a homicide in aid of racketeering. (SI at ¶¶ 11–13). Still,

5

Count 2 is nevertheless predicated, as with Count 1, on a showing of racketeering activity. (*See* SI at ¶ 12). Accordingly, and because the Court has not located any case law to the contrary, the Court finds the following case law pertaining to RICO conspiracy charges to be informative as to making that showing under Count 2's charge, 18 U.S.C. § 1959(a)(1) and (2).

Defendant argues that because both Counts 1 and 2 are predicated on racketeering acts and that those acts are predicated, themselves, on certain underlying offenses (the "Predicate Offenses"), the elements and identity of those Predicate Offenses must be plead in the indictment. (Def. Mot. at 7–8). Defendant provides two theories as to how the SI violates the foregoing: (1) rather than specify the Predicate Offenses the Defendant is accused of, the SI merely recites a list of categories of Predicate Offenses and (2) the SI fails to plead the elements of the Predicate Offenses. (*Id*. at 8, 10). As an example of this first claimed deficiency, Defendant points to the SI's allegations "that . . . Defendant violated or intended to violate broad, multi-pronged statutory provisions—and sometimes entire sections of the New York State Penal Law or U.S. Code—without identifying which of several possible [Predicate Offenses] is charged." (*Id*. at 9). Regarding the second, Defendant again points to the "generic label and statutory citation . . ." used in the SI as failing to meet Defendant's claimed requirement that the Government must have plead the elements of the Predicate Offenses. (*Id*. at 10–11).

Defendant is mistaken. To make out a RICO conspiracy claim, the government "need not establish . . . that the defendant committed any predicate act." *United States v. Arrington*, 941 F.3d 24, 36 (2d Cir. 2019) (citing *United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008)). It is sufficient if the government "proves the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme." *Id*. at 36–37 (citing *United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011)).

Here, the Government "identif[ied] an enterprise [(SI at ¶ 2)], name[d] the defendant as someone associated with that enterprise [(*Id*. at ¶¶ 1–2)], specif[ied] the time period during which the conspiracy operated [(*Id*. at ¶¶ 8, 12)], list[ed] specific types of predicate crimes allegedly committed [(*Id*. at ¶¶ 8(a)–(f), 12(a)–(f))], and discuss[ed] in detail the means and methods of the conspiracy [(*Id*. at ¶ 7)]." *Cooper*, 2020 WL 2307646, at *3 (citing *Raniere*, 384 F. Supp.3d at 300) (internal quotations omitted).

Moreover, both Counts 1 and 2 closely tracks the relevant statutory language, as required by FRCP 7(c). *Compare* 18 U.S.C. § 1962 *with* (SI at ¶ 8); *compare* 18 U.S.C. § 1959(a) *with* (SI at ¶ 13); *see also*, Fed. R. Crim. P 7(c); *Dawkins*, 999 F.3d at 779 (2d Cir. 2021) (citing *Wedd*, 993 F.3d at 201 (2d Cir. 2021)). Accordingly, the Government has plead Counts 1 and 2 with sufficient particularity.

### ii.  RICO's "Pattern" Element[1]

Defendant also argues that the SI fails to adequately plead a "pattern" of racketeering activity. (Def. Mem. at 3–7). Specifically, Defendant argues the SI fails to sufficiently show "relatedness" between Predicate Offenses. (*Id*. at 5).

The Government is required to establish a pattern of racketeering activity so as to "prevent application of the racketeering statute to perpetrators of isolated or sporadic criminal acts." *Raniere*, 384 F. Supp.3d at 300-01 (citing *United States v. Coppola*, 671 F3d 220, 243 (2d Cir. 2012). "To establish the pattern element of a RICO conspiracy charge at trial, the Government must prove that the defendants agreed to commit two or more crimes within ten years that are related to each other and to the enterprise, and together pose a threat of continuing

---

[1] The Court notes that the title of the relevant section in Defendant's motion only makes reference to Count 1. (*See* Def. Mot. at 3-7 (I. Count One Must Be Dismissed For Failure To Alleged A Pattern of Racketeering Activity)). Nevertheless, Defendant ends this section with "Count One and <u>Two</u> must therefore be dismissed." (Def. Mot. at 7) (emphasis added). The Court will therefore analyze Defendant's argument with respect to both Counts.

criminal activity." *Id*. at 300 (internal citations and quotations omitted). That is, there are two elements of a RICO pattern: (1) relatedness and (2) continuity. *Id*.

Relatedness has two sub-requirements. Predicate Offenses must have "horizontal relatedness", which "requires that acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Black v. Ganieva*, 619 F. Supp.3d 309, 337 (S.D.N.Y. 2022) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)) (internal quotations omitted). Predicate Offenses must also have "vertical relatedness", which "requires that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." *Id*. (citing *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010) (per curiam)).

Defendant argues that the SI fails "most glaring[ly]" with respect to vertical relatedness, but also as to horizontal relatedness. (Def. Mot. at 5–7.)  Regarding the former, Defendant finds the SI's recitation of "state and federal statutory offense[s, devoid of] the time, place or relevant Defendants[, and the lack of] indication that the charged Defendant or other co-defendants were enabled to commit the predicate acts solely because of their position in the enterprise [or] suggest[ion] that the acts related to the activities of the enterprise . . ." is insufficient. (*Id*. at 5–6) (cleaned up). As to the latter, Defendant argues that the Predicate Acts fail to "link[] all of the unidentified [co-conspirators] and [Defendant]." (*Id*. at 6–7.)

As in *Raniere*, however, Defendant mistakes "what the Government must prove at trial and what it must plead in the indictment." *Raniere*, 384 F. Supp.3d at 301 (internal citation omitted). In an indictment, "[t]he government does not have to plead either subpart of the pattern element—relatedness or continuity—with particularity[,] and at most, an indictment need only

8

specify predicate that evidence continuity and relatedness." *Cooper*, 2020 WL 2307646 at *4 (citing *Raniere*, 384 F. Supp.3d at 301) (cleaned up).

Here, the SI describes the alleged Enterprise (SI at ¶¶ 1–5), details its purposes, means and methods (*id*. at ¶¶ 6–7), and alleges the Defendant committed a number of acts constituting racketeering activity (*id*. at ¶ 8). It further alleges that Defendant agreed a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of Bully Hard. (*Id*. at ¶ 9). Such allegations "evidence continuity and relatedness[, and sufficiently state] the pattern element of a RICO conspiracy." *Cooper*, 2020 WL 2307646 at *5 (cleaned up).

Accordingly, and for the foregoing reasons, Defendant's motion to dismiss Counts 1 and 2 is denied with prejudice.

## II.    Motion for a Bill of Particulars

Defendant moves for a bill of particulars "requiring the government to distinctly and specifically advise [Defendant] of the essential details of the charges against him." (Def. Mem. at 13).

### a.  *Legal Standard*

Local Criminal Rule 16.1 ("LCR 16.1") provides that "[n]o motion addressed to a bill of particulars . . . shall be heard unless counsel for the moving party files in or simultaneous with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised in the motion without the intervention of the Court and has been unable to reach agreement." Courts in this District have held that failure to comply with LCR 16.1 is "fatal to the motion." *United States v. Dupigny*, 18-CR-528 (JMF), 2019 WL 2327697, at *2 (S.D.N.Y. May 30, 2019) (collecting cases).

A bill of particulars is intended to "provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (abrogated on other grounds by *United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010)). "[T]he proper test in deciding whether a bill of particulars should be required of the Government is whether the bill of particulars is *necessary* for the defense, not whether it would aid the defendant in his preparation." *United States v. Murgio*, 209 F. Supp.3d 698, 720 (S.D.N.Y. 2016) (citing *United States v. Trippe*, 171 F. Supp.2d 230, 240 (S.D.N.Y. 2001)) (emphasis in original).

District courts have discretion whether to grant a bill of particulars. *Torres*, 901 F.2d at 234 (citing *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)). A bill of particulars may not be used to acquire evidentiary detail. *Id.* Nor may it be used as a general investigative tool. *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)). Courts consider "whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment itself." *Id.* (citing *United States v. Feola*, 651 F. Supp. 1068, 1133) (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied*, 493 U.S. 834 (1989)).

### b.  Discussion

Defendant argues that the Government has not met its obligation to identify the specific charges levied against Defendant by "referring him to voluminous materials that have been provided to date in discovery." (Def. Mem. at 14). Consequently, and in particular, Defendant requests the following information: (1) the dates Defendant is alleged to have joined and was a member of Bully Hard; (2) the basic facts establishing Defendant's participation, conduct, and knowledge of the enterprise; (3) the agreement, presence, or assistance, directly or indirectly, in

10

any agreement to further the objectives of the racketeering conspiracy; (4) the basic facts for any

Predicate Offense in which the Government alleges Defendant participated; (5) the date, place,

and conduct wherein Defendant demonstrated his agreement that a conspirator would commit at

least two acts of racketeering activity in the conduct of the affairs of Bully Hard, as alleged in the

SI; (6) the exact date, place and conduct wherein Defendant entered the conspiracy; (7) the exact

date Defendant last participated in any overt acts of the conspiracy; (8) the actions Defendant

took in furtherance of the conspiracy; (9) the dates, times, locations and participants of the

multiple offenses listed in paragraphs 8a–f and 12a–f of the SI; (10) the identity of the co-

conspirators and the alleged acts by dates and location of the offenses that they committed in

furtherance of the RICO conspiracy; and (11) the names of Defendant's alleged co-conspirators.

(*Id*. at 15).

        In response, the Government notes that it has provided "ample discovery", including

"*nine* detailed search warrant affidavits" initially produced in August 2022. (Gov't Opp. at 13)

(emphasis in original). Those search warrants relate to, among other things, social media and

cloud storage accounts maintained by Defendant, historical cell-site data associated with

Defendant's cell phone, social media accounts and cell phones maintained by Defendant's

alleged co-conspirators, including historical cell-site data, and cloud storage accounts maintained

by three witnesses. (*Id*.) The Government also reiterates its offer to assist Defendant with

"sift[ing] through discovery." (*Id*. at 13–14). Further, the Government points to the details

contained in the SI and amount of discovery already provided as reasons to deny Defendant's

request. (*Id*. at 14).

        The Court notes at the outset that Defendant has not complied with LCR 16.1—

Defendant has not filed an affidavit certifying he has conferred with the Government, which

itself avers that Defendant has not sought to confer. (*See* Gov't Opp. at 12). As noted above, this failure can be, itself, fatal. The Court will nevertheless consider the merits of Defendant's request.

Defendant has failed to show that the requested information is necessary. *Murgio*, 209 F. Supp.3d at 720 (S.D.N.Y. 2016) (citing *Trippe*, 171 F. Supp.2d at 240 (S.D.N.Y. 2001)). Indeed, "requests . . . for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have almost uniformly been denied." *United States v. Bin Laden*, 92 F. Supp.2d 225, 242 (S.D.N.Y. 2000) (internal citations and quotations omitted).

Defendant's quarrel does not seem predicated on whether the requested information has been provided, but rather, on the amount of discovery that must be reviewed. (*See* Def. Mot. at 14). The Government provided concrete examples of much of the information Defendant seeks being "provided elsewhere", *Strawberry*, 892 F. Supp. at 526 (S.D.N.Y. 1995) (citing *Gottlieb*, 493 F.2d at 994 (2d Cir. 1974)), including in the SI or in the search warrants discussed above. (Gov't Opp. at 12–14). Moreover, the Government has averred to its willingness assist Defendant in reviewing the discovery already produced. (*Id*. at 13–14). As such, the Court finds sufficient facts to put the Defendant on notice of the charges lodged against him. Therefore, Defendant's request for a bill of particulars is denied with prejudice.

### III.   Motion to Compel Disclosure of any Pretrial Identification, Identifying Witnesses' Names, and to Preclude the In-Court Identification of Defendant

Defendant seeks to: (1) compel the Government to disclose how Defendant was identified as being involved in the alleged illegal acts and as a member of Bully Hard, (2) compel the Government to disclose the names of the witnesses who identified Defendant, and (3) hold a *Biggers* hearing to determine the propriety of in-court identification of Defendant given, according to Defendant, potential deficiencies in which Defendant was identified by witnesses as

having participated in the June 20 Homicide. (Def. Mot. at 16–17). In response, the Government

proposes disclosing the identities of the witnesses referenced in the Government's *Brady* letter

sixty days before trial. (Gov't Opp. at 15). The Government is silent as to the identification

procedures and Defendant's request for a hearing.

Given the Court has not been provided any basis for withholding the use of any

identification procedures as requested by Defendant or why the identifying witnesses' names or

pseudonyms should not be disclosed , the Government is directed to turn over such materials and

names within ten days of this Order. The Government is also directed to respond substantively to

Defendant's request for a *Biggers* hearing to determine the constitutionality of any such

identifications made pursuant to those procedures within ten days of this Order.

### IV.    Motion to Suppress Evidence Obtained from Cell Phones and for a *Franks* Hearing

Defendant also moves to suppress evidence acquired pursuant to warrants for Cellphone

Location Information and for Defendant's cell phone, the former dated March 10, 2021 (the

"CLI Warrant") and the latter dated May 10, 2022 (the "Cell Phone Warrant", and together with

the CLI Warrant, the "Warrants"), and each signed by Magistrate Judge Andrew E. Krause. (*See*

Def. Mem. at 17–23; *see also*, Affirmation of Michael K. Burke, Esq. in Support as to Elijah

Bermudez re Motion to Dismiss (the "Def. Aff."), Exs. D & E, at ECF No. 20). Defendant argues

the Warrants lacked probable cause due to deficiencies in the affidavits supporting the

applications for the Warrants. (Def. Mot at 17–22). In the alternative, Defendant requests a

*Franks* hearing. (Def. Mot. at 17, 22–23).

#### a.   *Legal Standard*

An affidavit in support of a search warrant is presumptively valid. *Franks v. Delaware*,

438 U.S. 154, 171 (1978). In "certain circumstances, *Franks* permits a defendant to challenge the

truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and resulting search or seizure." *United States v. Mandell*, 752 F.3d 544, 551–52 (2d Cir. 2014) (citing *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003)) (internal quotations omitted). Those "certain circumstances" require a defendant to make a substantial preliminary showing: "(1) that there were intentional and material misrepresentations or omissions in the warrant affidavit, and (2) that the alleged falsehoods or omissions were necessary to the . . . probable cause finding." *Id*. at 352 (citing *Awadallah*, 349 F.3d at 64–65) (internal quotations omitted); *see also, United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (citing *Franks*, 438 U.S. at 155–56, 170–71).

"Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. Courts are directed to inquire into the "mental states of mind" of the affiant to ascertain whether the relevant statements were "designed to mislead" or were made with "reckless disregard of whether [they] would mislead." *United States v. Rajaratnam*, 719 F.3d 139, 153–54 (2d Cir. 2013) (citing *Awadallah*, 349 F.3d at 68).

A defendant must also show that the alleged falsehoods or omissions were "necessary to the issuing judge's probable cause determination, *i.e.*, material . . . ." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000). To determine materiality, a court must ignore the alleged falsehood or omission and determine "whether there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. DiTomasso*, 932, F.3d 58, 66 (2d Cir. 2019) (citing *Canfield*, 212 F.3d at 718) (internal quotations omitted).

"Probable cause is not a high bar[,] requir[ing] only a probability or substantial chance of criminal activity, not an actual showing of such activity" *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (citing *Illinois v. Gates*, 462 U.S. 213, 232, 243–244, n.13 (1983)). If "the available facts

would warrant a person of reasonable caution to believe that contraband or evidence of a crime is present, an officer has probable cause to conduct a search." *United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021) (citing *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotations omitted). In making that determination, courts look to the totality of the circumstances. *Id.* (citing *Harris*, 568 U.S. at 248).

### b. Discussion

Defendant fails to make a substantial showing that the affiants' statements made in support of the Warrants contained an intentional and material misrepresentation or omission. *Mandell*, 752 F.3d at 352. With respect to the CLI Warrant, Defendant points to the omission that a witness was unable to identify the Defendant after being shown a photo book including Defendant's picture. (Def. Mot. at 20). That witness only stated that an individual named "Quiet", whom the witness identified as a member of Bully Hard, was present for the June 20 Homicide and fired a gun during the altercation. (*Id.*)

Defendant fails, however, to reckon with the fact that affiant explicitly stated one of the purposes for obtaining the warrant was to identify "Quiet". (Def. Aff., Ex. D at ¶ 14). Inherently, then, an omission that a witness failed to identify the Defendant in an affidavit in support of the application for the CLI Warrant cannot be a "material . . . omission[,]" *Mandell*, 752 F.3d at 352 (citing *Awadallah*, 349 F.3d at 64–65), as, at the time the CLI Warrant application was made, the Government was searching for "Quiet", not specifically the Defendant. Moreover, the Government showed probable cause to obtain the cellphone site location data. A witness identified "Quiet" as present for the June 20 Homicide. (Def. Aff., Ex. D at ¶¶ 10.c-d). That same witness, after discussions with other witnesses to the June 20 Homicide, indicated "Quiet" picked up and shot a gun during the June 20 Homicide. (*Id.* at ¶ 10.e). Further, an iCloud digital storage account (the "iCloud Account") that was seized pursuant to a warrant issued in a separate

15

matter and of which a Bully Hard leader was believed to be the owner had tethered to it one of the cellphone numbers targeted by the CLI Warrant. (*Id.* at ¶¶ 12.a-b). That target cellphone number was saved under the name "Quiet Bully". (*Id.* at ¶ 12.a). Taken together, the witness statements placing "Quiet" at the scene of the June 20 Homicide and the iCloud Account information tying the target cell phone number to a "Quiet Bully" are sufficient for "a person of reasonable caution to believe that contraband or evidence of a crime is present," *McKenzie*, 13 F.4th at 236 (citing *Harris*, 568 U.S. at 243), thus providing the CLI Warrant with probable cause to the cell phone location information and warding off Defendant's challenge.

Regarding the Cell Phone Warrant, Defendant alleges deficiencies including: (1) the affiant's failure to claim familiarity with Bully Hard or Defendant's association with Bully Hard; (2) the affiant's failure to state how he knows an individual with the alias "Quiet" was a senior leader of Bully Hard and to provide a description of that individual; (3) that a witness initially identified a different individual from Defendant as "Quiet" from a photo book; (4) that two additional witnesses only identified an individual known as "Quiet" as being in the vicinity of the June 20 Homicide but did not witness the event itself; (5) that two other witnesses who were present for the June 20 Homicide failed to identify the Defendant as the "Quiet" who was a member of Bully Hard and committed the June 20 Homicide; (6) that the affiant did not inform Magistrate Judge Krause that Defendant's prior criminal records did not indicate he used the alias "Quiet"; and (7) that the affiant failed to inform Magistrate Judge Krause that two other individuals from the Poughkeepsie area had criminal records indicating they used the alias "Quiet". (Def. Mot. at 17–19).

Defendant similarly fails to demonstrate the supporting affidavit for the Cell Phone Warrant lacks probable cause. Despite Defendant's omissions listed above that purportedly call

into question Defendant's association with the alias "Quiet", (*see, e.g.*, Def. Mem. at 18-20),

Defendant himself omits that a person identified as Individual-2 in the affidavit supporting the

Cell Phone Warrant: (1) knew that "Quiet" was in the vicinity of the June 20 Homicide; (2) was

aware that "Quiet" was initiated into Bully Hard; (3) knew that "Quiet" was on the run from the

authorities for failure to report for parole; (4) exchanged messages with "Quiet" immediately

after the June 20 Homicide and wherein "Quiet" stated he "didn't mean for what happened to

happen"; and, most importantly, (5) had identified the Defendant as "Quiet" from a photograph.

(Def. Aff., Ex. E at ¶¶ 10.a-f). Moreover, Individual-2 had lived with "Quiet" in the vicinity of,

and close in time to, the June 20 Homicide and had reason to believe "Quiet's" name was

"Elijah". (*Id.* at ¶¶ 10.b, f). Individual-2's statements to the Government, then, obviate the need

for including the omissions to the affidavit in support of the Cell Phone Warrant listed by

Defendant. Individual-2 indicated that "Quiet" was a member of Bully Hard, had access to a gun,

was in the vicinity of the June 20 Homicide, and directly tied the Defendant to the "Quiet" alias.

Consequently, none of Defendant's offered omissions concerning alleged deficiencies tying

Defendant to the June 20 Homicide and the alias "Quiet" rise to the level of "material".

Defendant's motion to suppress evidence gathered pursuant to the Warrants and for a *Franks*

hearing is therefore denied.

## V.    Motion to Compel Disclosure of 404(b) Material and a Related Pre-Trial Hearing

Defendant requests, pursuant to Fed. R. Evid. 404(b) ("Rule 404(b)"), pretrial notice of

the general nature of evidence of other crimes, wrongs, or acts of a person that the Government

intends to use at trial. (Def. Mem. at 23-24). Defendant also requests the Government provide a

theory of admissibility of each piece of evidence it intends to introduce under Rule 404(b). (*Id.* at

24). Finally, the Defendant requests a pre-trial hearing concerning the admissibility of such statements. (*Id*.).

In response, the Government relies on the Advisory Committee's Note that Rule 404(b) only requires the Government to "apprise the defense of the general nature of the evidence of extrinsic acts." Ad. Comm. Notes to Fed. R. Evid. 404(b) (1991); (*see also* Gov't Opp. at 22). The Government also notes that it will keep with "custom" in this District to provide notice to Defendant of "its intent to use any such evidence well in advance of trial, and consistent with any such schedule set by the Court . . . ." (Gov't Opp. at 23).

Given that a trial date is not set, the Court denies Defendant's request as premature with prejudice to renew. The Court also orders, once a trial date is set, that the Government provide any such material Defendant may request pursuant to Rule 404(b) no later than forty-five days before trial.

## VI.   Motion for Pre-Trial Notice of the Government's Intent to Use Evidence

Defendant moves pursuant to FRCP 12(b)(4)(B) for an order directing the Government to make inquiry and provide Defendant with written notice of any and all evidence or information required to be disclosed under FRCP 16 that the Government contemplates using in its evidence-in-chief at trial. (Def. Mem. at 25). Defendant requests that order require disclosure as soon as possible but no later than sixty days before trial so that Defendant may make objections to any such evidence. (*Id*.). Defendant's concern again relates to the volume of discovery produced by the Government, and argues "it would be unfair, unreasonable and extraordinarily time consuming to the defendant to have to attempt to speculate as to which . . . documents the government intends to introduce as part of its case-in-chief." (*Id*.).

The Government points to the Advisory Committee Notes to FRCP 12, which provide that when a defendant "wishes to know what types of evidence the government intends to use so

that he can make his motion to suppress prior to trial, he can request the government give notice

of its intention to use specified evidence which the defendant is entitled to under rule 16." Ad.

Comm. Note to Fed. R. Crim. P. 12 (1974).; (*see also* Gov't Opp. at 24). The Government also

cites to a case from the Eastern District of Virginia for the propositions that, first, the Defendant

must specifically identify potentially suppressive evidence and, second, that FRCP 12(b)(4)(B)

does not compel the Government to "disclose its exhibit and witness list at this time [before

trial]." *United States v. Ishak*, 277 F.R.D. 156, 158-59 (E.D. Va. 2011); (see also Gov't Opp. at

24-25).

This Court agrees with the Eastern District of Virginia's analysis in *Ishak*. When taken

together with the Advisory Committee Notes, FRCP 12(b)(4)(B) cannot be read as authority for

the Defendant to make a blanket request for the Government to turn over evidence it intends to

use in its case-in-chief before trial has been scheduled. Accordingly, Defendant's motion is

denied without prejudice to renew after trial is scheduled and with specified items of evidence

requested. Moreover, acknowledging the Government's statement that it has complied, and will

continue to comply, with its obligations under FRCP 16 (*see* Gov't Opp. at 30), if there remains

any outstanding discovery, the Government is directed to make any such disclosures required by

FRCP 16 upon Defendant's request forthwith.

### VII.    Motion to Dismiss Count Four

In addition to Counts 1 and 2, Defendant also seeks to dismiss Count 4—though, as

admitted by Defendant, only to preserve it for appeal. (Def. Mot. at 26). Count 4 of the SI

charges Defendant with a violation of 18 U.S.C. § 922(g)(1), i.e., for being a felon in possession

of ammunition. (*See*, SI at ¶ 15).

Defendant argues that Section 922(g)(1) violates the Commerce Clause because it does

not fall within the "three general categories of regulation" that clause empowers to Congress to

enact. (See Def. Mem. at 26–31) (citing *Gonzalez v. Raich*, 545 U.S. 1 (2005)); see also, U.S. Const. art. 1, § 8, cl. 3. Specifically, Defendant argues that possession of a firearm lacks a sufficiently "'substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.'" (*United States v. Lopez*, 514 U.S. 549, 558–59 (1995)).

Defendant correctly concedes, however, that precedent forecloses his argument. (Def. Mem. at 30–31). First, the Supreme Court assumed the constitutionality of Section 922(g)(1) in *Scarborough v. United States*, 431 U.S. 563 (1997). Moreover, as the Government noted, the Second Circuit itself has reiterated the constitutionality in the face of a Commerce Clause challenge. *United States v. Santiago*, 238 F.3d 213, 217 (2d Cir. 2001) (upholding Section 922(g) as constitutional after the Supreme Court's decisions in *Lopez*, 514 U.S. 549, *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000)). Indeed, Defendant admits that other Circuits uniformly upheld the constitutionality of Section 922(g)(1), if with some reservations and dissent. (Def. Mem. at 30–31).

Even so, this Court finds no reason to depart from the Second Circuit's holding in *Santiago*, and therefore denies the Defendant's motion to dismiss Count 4.

## VIII. Motion to Compel *Brady* and *Giglio* Material and Information About Loss or Destruction of Evidence

Defendant seeks to compel the Government to disclose all *Brady* and *Giglio* material, as well as information regarding the loss or destruction of evidence. (Def. Mem. at 31-32, 34-35).

### a. *Brady* Material

Brady material must be disclosed "no later than [the] point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosed had been made." *United States v. Helbrans*, 547 F. Supp.3d 409, 436 (S.D.N.Y. 2021) (citing *In re United States (U.S. v. Coppa)*, 267 F.3d 132, 142 (2d Cir. 2001)) (internal quotations omitted). The bare

threshold is that a defendant must "possess[] *Brady* evidence in time for its effective use . . . ." *Id*.

On June 16, 2022, the Court issued an order pursuant to FRCP 5(f) confirming the Government's disclosure obligations under *Brady*. (*See*, ECF No. 6). The Government has reiterated its "continuing obligation to disclose any Brady material, and to make a diligent search for any relevant material that may be in the possession of the 'prosecution team,' including investigating agents and officers." (Gov't Opp. at 27). The Government has also committed itself to "provide timely disclosure of any additional Brady material if any such material comes to light." (*Id.*) Finally, the Government has already made one such *Brady* disclosure in a letter dated July 13, 2022, which noted the two witnesses who failed to identify the Defendant as "Quiet" in connection with the June 20 Homicide. (*See* Def. Aff., Ex. A).

Consequently, and as this Court has held before, "where trial has not yet been scheduled, the Court accepts the Government's good-faith representations and denies Defendant['s] motion[] concerning *Brady* materials without prejudice as premature." *Helbrans*, 547 F. Supp.3d at 436 (collecting cases).

### b. *Giglio* Material

Defendant similarly seeks the production of any information that may be used to impeach the testimony of a Government witness pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). The Court has already issued an order confirming the Government's disclosure obligations under *Giglio*. (See ECF No. 6).

*Giglio* does not confer a general right to pre-trial discovery of impeachment or other *Giglio* materials given that the import of such material ripens if, and only if, a witness testifies at trial. *Helbrans*, 547 F. Supp.3d at 436. Courts in this Circuit have routinely denied requests to

21

compel early disclosure of Giglio material in advance of trial. *Id*. (collecting cases). Further, the Government has stated that, pending reaching an agreement with Defendant on the matter, it will provide any *Giglio* material 30 days before trial. (Gov't Opp. at 30).

Accordingly, and given trial is yet to be scheduled, Defendant's request is denied without prejudice as premature.

### c. *Information About Loss or Destruction of Evidence*

Defendant seeks an order that the Government make an inquiry to ensure that no evidence has been lost or destroyed, while conceding that he has no indication that any such loss or destruction has occurred. (Def. Mot. at 34–35). The Government responds that it is similarly unaware of any loss or destruction and reiterates that it understands, and has complied with, its obligations under FRCP 16, *Brady*, *Giglio*, and 18 U.S.C. § 3500. (Gov't Opp. at 30).

In the absence of a developed basis underlying this request, and given the Government's good-faith representations on the matter, Defendant's request for an order directing the Government to inquire as to lost or destroyed evidence is denied without prejudice. It is further ordered that, to the extent the Government identifies any information regarding the loss or destruction of evidence, that it be turned over to Defendant forthwith.

## IX.   Motion to Compel Early Notice and Production of Expert Testimony and Related Materials and Early Production of Jencks Act Material

Defendant seeks the immediate notice and production of expert testimony, along with related reports and evidence, the Government may seek to introduce at trial, and, no later than 30 days before trial, the production of Jencks Act material pursuant to 18 U.S.C. § 3500. (Def. Mot. at 35–36).

###### a. Expert Witness Material

As the basis for his request, Defendant points to the "steps [necessary] to investigate [the expert testimony] reports . . ." as sufficient to require that information's immediate release to Defendant. (Def. Mot. at 35). The Government responds that it intends to provide "timely expert notice sufficiently in advance of trial . . ." and offers to disclose such material fourteen days before trial. (Gov't Opp. at 31).

Accordingly, the Defendant's motion is granted, insofar that the Government is directed to make such disclosures of expert material twenty-one days before the trial date, once scheduled.

###### b. Jencks Act Material

Defendant asserts that "judicial economy and efficiency" supports his request for Jencks Act material, noting that should such material be produced now, he will be able to cross-examine Government witnesses immediately after their direct testimony. (Def. Mot. at 35). As such, the Defendant requests that all such material be produced thirty days before trial. (*Id*.) In response, the Government notes that it will endeavor to reach an agreement with the defense that all the relevant material will be produced thirty days before trial (Gov't Opp. at 29, 31).

As, such Defendant's motion is denied without prejudice to renew in the event the parties do not come to an agreement to produce Jencks Act material thirty days prior to the trial date.

## X.   Defense Counsel's Reservation of the Right to Bring Additional Motions

Finally, Defendant requests that the Court grant leave for counsel to bring additional motions.

Given that Defendant has recently been appointed new counsel (*see* ECF No. 28), the Court grants Defendant's request to the extent any such motions are not duplicative of those disposed of within this Opinion & Order.

**CONCLUSION**

For the foregoing reasons, Defendant's motions to dismiss Counts 1, 2, and 4 of the (S1) Superseding Indictment, for a bill of particulars, and to suppress evidence gathered pursuant to the cell-site location and cell phone warrants are DENIED with prejudice. Defendant's motion to compel the disclosure of pre-trial identification procedures and the names of the witnesses is GRANTED, and the Government is DIRECTED to turn over such information forthwith. The Government is further DIRECTED to respond substantively to Defendant's request for a *Biggers* hearing. Defendant's motion to compel the disclosure of Fed. R. Evid. 404(b) material is DENIED without prejudice as premature. Further, upon the scheduling of a trial date, the Government is directed to turn over Fed. R. Evid. 404(b) material at least forty-five days before such date. Defendant's motion to compel the pre-trial notice of the Government's intent to use evidence is DENIED without prejudice to renew after trial is scheduled and with specified requests for evidence. Defendant's motion to compel disclosure of *Brady* and *Giglio* material and information regarding the loss or destruction of evidence is DENIED without prejudice to renew. Defendant's motion to compel early notice and production of expert testimony and related materials is DENIED without prejudice to renew as premature. The Government is DIRECTED to provide such material no later than twenty-one days prior to trial, once scheduled. Defendant's motion for the early production of Jencks Act Material is DENIED without prejudice to renew. The Government is DIRECTED to provide such material no later than thirty days before trial, once scheduled. Finally, Defendant is GRANTED the right to bring additional motions insofar as

such further motions are not duplicative to those disposed of within this Opinion & Order. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 19.

Dated:    November 07, 2023                              SO ORDERED:

         White Plains, New York

                                     NELSON S. ROMÁN

                                 United States District Judge