UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/08/2024__
```

UNITED STATES OF AMERICA,

       -v.-

ELIJAH BERMUDEZ

               Defendant.

22-CR-335 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant Elijah Bermudez ("Defendant") was charged on June 14, 2022, with one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 2). In the (S1) Superseding Indictment (the "SI"), the Defendant was charged on December 7, 2022 with one count of racketeering conspiracy in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and 846; one count of murder in aid of racketeering by allegedly engaging in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1) and committing knowing and intentional murder in violation of New York Penal Law §§ 125.25 and 20.00; one count of use of a firearm resulting in death in violation of 18 U.S.C. §§ 924(j)(1) and (2); and one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 16).

Presently before the Court is the Government's Memorandum of Law in Opposition ("Gov't Opp.") submitted pursuant to this Court's Order & Opinion dated November 7, 2023. For the following reasons, the requests in the Gov't Opp. are GRANTED.

## BACKGROUND

On August 3, 2023, Defendant filed an omnibus motion (*see* ECF No. 19) and supporting memorandum of law ("Def. Mem", ECF No. 21), which this Court granted, in part, and denied, in part, in its Order & Opinion dated November 7, 2023 (the "Prior Order"). (*See* ECF No. 29). The Court assumes familiarity with the alleged facts of this case as detailed in the Prior Order. Pursuant to the Prior Order, the Government filed a Memorandum in Opposition on November 17, 2023. (ECF No. 31).

## Discussion

The Government seeks to: (1) turn over the names of certain witnesses that identified the Defendant in conjunction with 3500 and Jencks Act material, no later than thirty (30) days before trial; (2) allow certain witnesses to identify the Defendant in court and testify as to their prior identifications of the Defendant; and (3) that the Defendant not be granted a *Biggers* hearing to determine whether in-court identification of the Defendant by certain witnesses is appropriate. (*See* Gov't Opp.). The Court will address each of the Government's requests in turn.

### I.     Disclosure of Witness Names

In the Prior Order, this Court directed the Government to turn over the names of witnesses that identified the Defendant forthwith. (Prior Order pp.12-13, 24). The Government avers that it has provided the Defendant with "materials associated with identification procedures, such as set books and six-pack photo arrays." (Gov't Opp. p.1). Moreover, the Government has provided Defendant's counsel, on an attorney's-eyes-only basis, the names of the witnesses referenced in the Government's July 13, 2022 *Brady* letter. (*Id*.). The Government now requests the Court reconsider its ruling with respect to the names of witnesses who identified the Defendant because of "serious safety concerns about these witnesses and their family members." (*Id*.). The

Government suggests that providing those names concurrently with its 3500 and Jencks Act material, no later than thirty days before trial, is sufficient. (*Id*.).

The Government notes that these witnesses lived in, or in the vicinity, of the neighborhood where Defendant resided at the time of the alleged murder, June 20, 2020 (the "June 20 Homicide"). (*Id* p.2). Moreover, the Government states that the Defendant knows "at least two of the witnesses extremely well", including where those witnesses, and the families of those witnesses, live. (*Id*.). The Government also claims that one witness is particularly "vulnerable to threats and intimidation" because that witness is "quite young". (*Id*.). Finally, the Government argues that because Defendant is charged with a murder he allegedly perpetrated in connection with his membership in a violent gang, these safety concerns are "particularly acute." (*Id*.).

As a general matter, the Government is not required to provide its witness list to the defense prior to trial. Fed. R. Crim. P. 156; *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorable. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). A District Court may order the Government to turn over its witness list prior to trial, however, but "[t]o compel immediate disclosure of the Government's witness list, [the defendant] must show: "(1) [the defendant's] need for disclosure outweighs the Government's need for concealment; (2) immediate disclosure is material to the preparation of the Defense; and (2) immediate disclosure is reasonable in light of the circumstances surrounding the case." *United States v. Mohamed*, 148 F. Supp.3d 232, 247 (E.D.N.Y. 2015) (citing *United States v. Barret*, 824 F. Supp.2d 419, 457 (E.D.N.Y. 2011)); *see also*, *United States v. Sezanayev*, 17 Cr. 262 (LGS), 2018 WL 2324077, at *10 (S.D.N.Y. May 22, 2018). It is typical in the Second Circuit to deny such motions without a

showing of need. *United States v. Rivera*, 16 Cr. 175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017).

Defendant has failed to make a sufficient showing of need. First, Defendant has been provided with the identification procedures requested and the names of witnesses the Defendant noted in the Government's July 13, 2022 *Brady* letter. (Gov't Opp. p.1). Second, trial has not yet been scheduled in this matter. Such lack of imminence bolsters the Government's compelling concerns regarding the safety of these witnesses and their families. (Gov't Opp. p.2). Third, Defendant only makes a bare request for disclosure of the names of the Government's witnesses, but otherwise does not make an argument for their disclosure. (*Compare* Def. Mem. p.1 *with* Def. Mem. pp.16-17). Accordingly, the Government's request is GRANTED—the Government is directed to provide the remaining names of its witnesses that have identified the Defendant no later than thirty days prior to trial, once scheduled.

## II.     In-Court Identification of the Defendant & Testimony Regarding Prior Identifications

In his initial motion to dismiss, Defendant sought to preclude witnesses from identifying him in court. (Def. Mem. pp. 1, 16-17). In its response, the Government argues that the identification procedures used when its witnesses identified the Defendant were not unduly suggestive and therefore in-court identification is proper. (Gov't Opp. p.3). The Government further seeks to allow these witnesses to testify about their prior identifications of the Defendant. (*Id.*).

### a.  Legal Standard

The protections afforded a defendant under the Constitution weigh more towards providing opportunity to discredit the evidence offered against the defendant, "not by prohibiting

introduction of the evidence . . . ." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). With respect to identifications via photo lineups, a defendant must first show that "law enforcement officers use[d] an identification procedure that is both suggestive and unnecessary." *Id*. at 238-39 (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977); *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). Once this threshold is cleared, courts are required, based on the totality of the circumstances, to determine whether "improper police conduct created a substantial likelihood of misidentification." *Id*. at 239 (citing *Biggers*, 409 U.S. at 201) (internal quotations omitted). In other words, only if the reliability of the witness' identification is "outweighed by the corrupting effect of law enforcement suggestion . . ." should the identification be suppressed. *Id*. (citing *Brathwaite*, 432 U.S. at 114) (internal quotations omitted).

Courts in this Circuit have adopted a two-part analysis to determine the admissibility of identification evidence. A defendant must first show that the identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991) (citing *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987)). That is, the identification procedures must create "a very substantial likelihood of irreparable misidentification." *United States v. Little*, 640 F. Supp.3d 306, 319 (S.D.N.Y. 2022) (citing *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009)). If the defendant fails to show the identification procedures were unduly suggestive, the Court need not proceed to the second step of the analysis because "where the pretrial identification was not unduly suggestive, it does not endanger the fairness of the trial, which is the principal due process focus." *Id*. (cleaned up). In such case, "any question as to the reliability of the witness' identifications goes to the weight of the evidence, not its admissibility." *Id*. (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

If the identification procedure was unduly suggestive, courts must then consider "whether the witness' in-court identification would be independently reliable, so as to vitiate any taint from the suggestive procedure." *Id.* (citing *Raheem v. Kelly*, 257 F.3d 122, 135 (2d Cir. 2001). At this stage, the court should consider the independent reliability of the identification through the *Biggers* factors: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (4) the length of time between the crime and the identification. *Id.* at 319-20 (quoting *United States v. Arroyo*, 600 F. App'x 11, 14-15 (2d Cir. 2015) (summary order); *see also*, *Biggers*, 409 U.S. at 199-200). None of the *Biggers* factors are sufficient alone; rather, courts must consider the reliability of the witness' identification based on the totality of the circumstances. *Brisco*, 565 F.3d at 89 (citing *Raheem*, 257 F.3d at 135).

### b. Analysis

Defendant fails to make a threshold showing of unduly suggestive procedure with respect to each of the Government's witnesses.

#### i. Witness-1

The Government first spoke with Witness-1 in or around July 2021, at which point Witness-1 described seeing the Defendant shortly before the June 20 Homicide and identified the Defendant as using the alias "Quiet". (Gov't Opp. p.3). Witness-1 stated that an individual with the Defendant displayed a gun. (*Id.*) Witness-1 walked away, only to hear gunshots and see police activity surrounding an individual on the ground shortly thereafter. (*Id.*)

Witness-1 was shown a set of six photographs consisting of individuals who resembled one another. (*Id.* pp. 3, 7). Courts in this Circuit have held that a lineup of six photographs is not unduly suggestive. *United States v. Gershman*, 31 F.4th 80, 94 (2d Cir. 2022); *see also United States v.*

*Muhanad Mahmoud Al-Farekh*, 956 F.3d 99, 112 (2d Cir. 2020) (noting with approval the holding in *United States v. Marreo*, 705 F.2d 652, 655 n.5 (2d Cir. 1983) that a six-photograph lineup is not unduly suggestive); *United States v. Brown*, 784 Fed. App'x 1, 3 (2d Cir. 2019) (summary order); *United States v. Archibald*, 734 F.2d 938, 940-41 (2d Cir. 1984).

Without more, nothing in the facts presented indicating a procedure so "suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *Simmons*, 923 F.2d at 950. Accordingly, the photo lineup shown Witness-1 was not unduly suggestive.

ii.   Witness-2

The Government first approached Witness-2 in or around April 2022. (Gov't Opp. p.3). When asked if Witness-2 knew anyone going by "Quiet", Witness-2 responded they believed "Quiet's" name was "Elijah" and that Witness-2 saw "Quiet" on a daily or near-daily basis in the months leading up to the June 20 Homicide. (*Id.* pp.3-4). Witness-2 then showed certain investigating officers a social media video of the individual Witness-2 knew as Quiet, whom one of the officers was able to identify as the Defendant from a photograph within the Defendant's RAP sheet. (*Id.* p.4). The officers then showed a picture of the Defendant to Witness-2, who "confirmed that the individual in the photograph was 'Quiet.'" (*Id.*).

The single photograph shown to Witness-2 is not unduly suggestive. "Displaying a confirmatory photograph of a person the witness has indicated that [they] already know is perfectly acceptable." *United Sates v. Hardy*, No. 10 Cr. 1123 (JSR), 2011 WL 7782582 (S.D.N.Y. 25, 2011). That is, a single photograph is not unduly suggestive when the witness' photo identification was "merely confirming" the individual identified by the witness. *Watson v. City of N.Y.*, 289 f. Supp.3d 398, 408-09 (E.D.N.Y. 2018). Even if the single photograph is suggestive, it does not rise

to the level of unduly suggestive when "the witness was not thereby influenced, as . . . when the witness' identification was already positive." *Gilbert v. Sup't of Collins Corr. Fac.*, No. 03 Civ. 3866 (LBS), 2004 WL 287683, at *8 (S.D.N.Y. Feb. 11, 2004).

Here, as in *Hardy*, Witness-2 was only shown the photograph after proffering information regarding "Quiet" and a video Witness-2 believed to be of "Quiet". There is nothing to indicate that Witness-2 was influenced by that photograph given Witness-2 had already offered knowledge of "Quiet", that "Quiet" went by "Elijah", and independently offered a video of the individual Witness-2 believed to be "Quiet". *Gilbert*, 2004 WL 287683, at *8. As such, the single photograph of Defendant shown to Witness-2 was not unduly suggestive.

   iii. <u>Witness-4</u>[1]

In or around February 2021, Witness-4 told investigators that they were present for, and part of, the dispute that led to the June 20 Homicide. (Gov't Opp. p.4). Witness-4 stated that "Quiet" was present for the dispute leading to the June 20 Homicide and described "Quiet" as a mid-20s male with light skin. (*Id.*). Initially, Witness-4 was presented with a thirteen-photograph lineup—which did not include Defendant's picture—and identified someone other than Defendant as "Quiet". Approximately a week later, however, Witness-4 met with law enforcement and alerted those officials, unprompted, that their prior identification was incorrect. (*Id.* pp.4-5). Around one month later, Witness-4 was presented with the same 13 photographs as in the initial lineup along with an additional, approximately 17 photographs, including one of the Defendant. (*Id.* p.5). Again, Witness-4 did not identify the Defendant. (*Id.*)

---

[1] The Government has not yet used any identification procedures with respect to their anticipated Witness-3. (Gov't Opp. p.4, n.4). Witness-3 has, however, indicated they have known the Defendant for years, identified the Defendant as "Eli Bermudez" and "Quiet", and has shown law enforcement text message exchanges between Witness-3 and the Defendant. (*Id.*) Without the use of identification procedures, it is premature to rule on any suggestiveness on the part of the Government.

The Government only requests that Witness-4 be allowed to testify as to whether Witness-4 recognizes "Quiet" in the courtroom. (*Id*. p.12). So long as the "identification procedures used prior to trial were not unduly suggestive, questions as to the reliability of an in-court identification affect only the identification's weight, not its admissibility." *United States v. Woodard*, 64 Fed. App'x 290, 291 (2d Cir. 2003) (quoting *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994) (*superseded by statute on other grounds*)) (cleaned up).

Witness-4 was shown a total of thirty photographs, once in a batch of only thirteen and, approximately a month later, the entire batch of thirty. (Gov't Opp. 3-4). Of those thirty photographs, the only one that can be definitively removed from consideration is the one Witness-4 initially identified as "Quiet" before recanting, leaving twenty-nine photographs as possibilities. (*Id*.). Defendant faces an uphill battle to suggest a twenty-nine-photograph lineup is unduly suggestive in light of the Court's prior ruling regarding a six-photograph lineup. *Gershman*, 31 F.4th at 94; *see also Muhanad Mahmoud Al-Farekh*, 956 F.3d at 112 (2d Cir. 2020); *Brown*, 784 Fed. App'x at 3 (summary order); *Archibald*, 734 F.2d at 940-41. Indeed, courts in this district have held that "[t]here is nothing inherently suggestive about a sequential display of a group of photographs." *United States v. Rivera*, No. 19 Cr. 131 (PAE), 2019 WL 6497504, at *5 (S.D.N.Y. Dec. 3, 2019) (quoting *Wagner v. Ercole*, No. 06 Civ. 814 (HBP), 2009 WL 6443854, at *10 (S.D.N.Y. June 12, 2009).

This Court sees no reason to depart from these rulings. Therefore, the photo lineup shown to Witness-4 was not unduly suggestive.

In sum, the Court holds that Witness-1 and -2 may testify as to their prior identifications of the Defendant and further holds that Witness-1, -2, and -4 may identify the Defendant in court if called to testify.

9

### III.   *Biggers* Hearing

Defendant initially moved for a *Biggers* hearing "to determine whether in-court identification of the defendant is proper in light of the prior lack of identification of the defendant." (Def. Mem. p.17). The Government avers that there are no disputes of material fact relating to its witness' identification of the Defendant. (Gov't Opp. p.14).

Contrary to the Government's position, Defendant stated that the "three witnesses to the murder [failed] to identify [Defendant] as the shooter." (Def. Mem. p.16). The Government's position is that only Witness-4 failed to identify the Defendant. (Gov't Opp. pp.4-5).

Even so, the Court has already held that the identification procedures used for Witness-1, -2, and -4 were not unduly suggestive and thus do not give rise to a "very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 198 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)) (cleaned up). As a result, to hold a hearing as to those witnesses would be duplicative. The Court therefore denies Defendant's request for a *Biggers* hearing without prejudice to renew his application in light of new witnesses and identification procedures.

### CONCLUSION

For the foregoing reasons, the Government's request to turn over the names of its witnesses that have identified Defendant thirty days prior to trial is GRANTED. The Government's request that Witness-1 and -2 be permitted to testify about their prior identification of the Defendant is GRANTED. Further, the Government's request that Witness-1, -2, and -4 be permitted to make an in-court identification of Defendant is GRANTED. Finally,

Defendant's request for a *Biggers* hearing is DENIED without prejudice to renew with respect to witnesses or identification procedures other than those discussed herein.

Dated:   January 8, 2024                                    SO ORDERED:
         White Plains, New York

                                          _____

                                                    NELSON S. ROMÁN
                                                United States District Judge

11